THE ARMOUR GRAIN COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(PATRICK FITZMORRIS, Defendant in Error.)

*Opinion filed October 28, 1926.*

1. WORKMEN'S COMPENSATION—*Supreme Court will not weigh conflicting evidence.* It is not the province of the Supreme Court to weigh conflicting evidence and substitute its judgment for that of the Industrial Commission unless the court can say that the finding of the commission is clearly and manifestly against the weight of the evidence.

2. SAME—*when award for medical services will be sustained.* Where there is evidence to sustain the employee's claim that he was requested by his employer's physician to secure his own doctor and that the former neglected or refused to give him necessary treatment, an award for medical and hospital services, which expense was necessarily incurred by the employee, will be sustained.

3. SAME—*award may be given for total disability due to mental disorder resulting from injury.* Where the evidence shows that an injured employee is unable to work and that there is no improvement in his condition after a long period of time an award for total and permanent disability is warranted; and it does not matter whether such disability is a direct result of physical injury or whether it results from mental disorder resulting from an injury.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding.

J. C. M. CLOW, (MAX F. ALLABEN, of counsel,) for plaintiff in error.

ROONEY, HEALY & MELANIPHY, (JOHN C. MELANIPHY, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Patrick Fitzmorris, defendant in error, (herein referred to as defendant,) was awarded compensation of $15 per week for 71 weeks for total temporary incapacity, against plaintiff in error, (herein referred to as plaintiff,) by an arbitrator, for an accidental injury received by him on March 19, 1921, while employed by plaintiff to blow cinders and pull fires at its grain elevator. The Industrial Commission affirmed the award, and on *certiorari* proceedings in the circuit court of Cook county the award was set aside and the cause remanded to the commission for further hearing. Additional evidence was heard by the commission and an award entered in favor of the defendant, finding that as a result of the injury he was wholly and permanently incapacitated for work, the award being $15 per week for 266 and two-thirds weeks and a pension for life of $26.67 per month, and $301.55 for medical services. Plaintiff sued out a writ of *certiorari,* and the superior court of Cook county confirmed the second award of the Industrial Commission and quashed the writ. This court allowed a writ of error to review the record.

Under paragraph (*a*) of section 8 of the Compensation act the employer is required to provide the necessary first aid, medical and surgical services and all necessary hospital services during the period for which compensation may be payable; all necessary medical and surgical services for a period of not longer than eight weeks, not exceeding an amount of $200, and in addition such medical or surgical services in excess of such limits as may be necessary during the time such hospital services are furnished. All of such services shall be limited to those which are reasonably required to cure and relieve from the effects of the injury. The employee may elect to secure his own physician, sur-

323—6

geon or hospital service at his own expense. It is the contention of plaintiff that the evidence shows that the defendant in error elected to secure his own physician, surgeon and hospital service, and that plaintiff is not liable in any sum therefor. The evidence shows that the employer had due notice of defendant's injury just after the accident and took no step to furnish any of such services for defendant.

Dr. Schussler testified that he was sent by an insurance company of the plaintiff, two days after the accident, to treat defendant; that he treated a cut on defendant's finger and prescribed liniment for his left shoulder and for soreness in his spine; that he called again two days later and took defendant to the hospital in his car and had made X-ray pictures of him; that he told defendant that he would operate on him as soon as the bruises disappeared and after the nervous condition resulting from the shock of the explosion had subsided; that the defendant did not return to his office or to the hospital for such services, and that he again called on the defendant, did not find him at home and learned that he had consulted another doctor, and he did not give any further treatment to defendant. He positively denied that he told defendant to get or employ his own doctor.

The defendant testified that he was at home five days after the explosion when Dr. Schussler called on him and was just regaining consciousness. Schussler did not give him any treatment and told him to use the treatment prescribed by the doctor he had gotten before he saw Dr. Schussler. Schussler told him to come out to the hospital the following Monday if he was able. He and his wife went to the hospital but the doctor was not there. He again went to the hospital on Tuesday and the doctor was not there. The nurse at the hospital made an X-ray picture of him and told him to go home and call his own doctor. He then called his own doctor, who performed an operation for him and treated him from that time on. Dr. Schussler

came to his house the evening of the operation and never gave him any treatment and told him to have his own doctor treat him.

Drs. Alfred J. Mitchell, Milton J. Latimer and Sigmund Krumholz, of Chicago, testified for respondent that they made minute examinations of defendant, but they do not testify to giving him any treatment or at whose instance they examined him. These examinations were made by Dr. Mitchell August 2, 1922, by Dr. Krumholz on February 17, 1924, and every day from February 28 to March 4, 1924, and by Dr. Latimer on February 29, 1924, and were apparently made by them with a view of testifying in this case.

While the defendant was in the hospital a representative of the insurance company named Skindzier came there to pay him compensation. He asked the defendant how much it was costing him at the hospital, and he told him he did not know. He did not say anything to the defendant about having the company's doctor to treat him, and did not inform the defendant that he would have to pay for his treatment if he used his own doctor and did not have the company's doctor to treat him.

It is not the province of this court to weigh conflicting evidence and substitute its judgment for that of the commission unless we can say that the finding of the commission is clearly and manifestly against the weight of the evidence. (*Keller* v. *Industrial Com.* 302 Ill. 610.) If the testimony of the defendant is to be believed, he did not refuse to accept the services of the physician sent him by plaintiff or the insurance company but endeavored to accept them. Failing to meet Dr. Schussler he acted on the request of Dr. Schussler himself and of the nurse at the hospital to which Dr. Schussler had requested him to go for the purpose of an operation and for treatment. Under this evidence the commission was warranted in finding that he returned to his own doctor for such treatment and opera-

tion at the instance of the company's doctor and who had been sent by the insurance company or the company to treat him or have him treated. There is no dispute on the question of whether or not the amount of the award is a reasonable charge for the services mentioned in the statute and obtained by the defendant. The amount of this award was properly allowed by the commission and confirmed by the court.

The evidence in this record, by the testimony of three physicians and the defendant and other witnesses who testified for him, is to the effect that he was able to do hard physical labor before he was injured but that he is now virtually a physical and mental wreck and unable to perform any kind of labor; that his condition is permanent and that there is no reasonable probability that he will recover his physical and mental strength and his ability to perform any kind of work. To use his own expression, his legs and eyes are weak and he has pains when he walks and he cannot lift anything that is heavy. He has no control of his bowels and wears a diaper to prevent his soiling the bedclothes and his clothing, which he otherwise would do involuntarily. There is a dispute among the medical experts who were called as witnesses as to whether or not the incontinence of the bowels is a functional or organic condition. The experts for the plaintiff testified that by elimination they could not find any organic condition which would cause the condition claimed by the defendant. The experts called as witnesses for the defendant testified to some organic conditions found in their examination, and Dr. Nathaniel Adams, who specializes in nervous diseases, gave it as his conclusion that his condition was functional; that it is in his mind; and that it is a neurosis,—a hysterical neurosis. He further stated the defendant is subnormal, has the marks of degeneration in his ears, in their abnormal position, and that he shows an abnormal functional condition. He gave it as his judgment that the man

would not be able to do any work unless he could rid himself of the notion that he had no physical ability or capacity for work. When he examined the defendant on January 23, 1923, he had a tremor in his hands and an instability of the reflexes, which were exaggerated. He has an anæsthetic condition of the rectum. His body was covered with bromide rash, due to taking some bromides. He wore a diaper, which showed soiling. He had a general neurosis, or traumatic neurosis, which is largely hysterical in type. He gave it as his judgment that that condition might with reasonable certainty be due to the accident he sustained. He had no judgment as to the duration of the condition and stated that it might clear up or it might never clear up; that he was not able to work, and will not be able to do so unless his mind becomes adjusted to his body conditions.

Dr. Olson testified for the defendant that he examined him twice,—September 25, 1922, and January 15, 1923; that when standing on his feet he was unsteady and swayed from side to side when his eyes were open. His rectum examination showed that the muscles of the anus were lacking in tone. The prostate was slightly sensitive but not enlarged. He wore a diaper, which was soiled by urine and from the feces. His second examination did not disclose any material change, except that there was more fecal matter upon the diaper and the skin rash was not so pronounced.

His injuries are described as a right inguinal hernia, a cut on the finger of the right hand, a bruised left shoulder, a contusion of the left hand, and a bruise in the region of the second and third lumbar vertebræ. No bones were fractured, except possibly a rib, but he suffered considerable shock and was unconscious after the explosion for several hours. Dr. Cain also testified for the defendant as to the above injuries and as to the operation for hernia. He gave it as his judgment that the involuntary movements of his bowels and kidneys were the result of trauma

and that the condition is a permanent one. The physicians for the plaintiff differed very widely in their views as to the serious character of the injuries of the defendant, and gave it as their conclusion that the subjective complaints of the defendant are out of all proportion to the objective findings in the case. They were unable to substantiate the contentions of the defendant as to the results of his injuries. One of these physicians stated that he noticed no indication of any escape of the contents of the bowels, and that the only manifestation of an escape of urine was very slight evidence of moisture. He further stated that he did not see his underclothing and did not know if they were soiled or wet and noticed no kind of odor. These physicians were of the opinion that the defendant could have returned to his usual work and occupation.

We do not deem it necessary to further discuss this evidence. The testimony of the defendant himself and of two or more other witnesses abundantly corroborates the defendant's physicians in their statement as to his soiling of his clothing and bedclothes by involuntary escape of fecal matter and of urine. Under this condition of the evidence the judgment of the court must be sustained. Where the evidence shows that an injured employee is unable to work and that there is no improvement in his condition over a long period of time an award for total and permanent disability is warranted, and it does not matter whether such disability is a direct result of physical injury or whether it results from mental disorder resulting from an injury. *Harrisburg Coal Co.* v. *Industrial Com.* 315 Ill. 377; *United States Fuel Co.* v. *Industrial Com.* 313 id. 590; *Solar-Sturges Manf. Co.* v. *Industrial Com.* 315 id. 352.

The judgment is affirmed.          *Judgment affirmed.*