(No. 20845.—)

THE POSTAL TELEGRAPH CABLE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(GODFREY LISS, Defendant in Error.)

*Opinion filed October 23, 1931.*

JACOB E. DITTUS, and HENRY L. CHATROOP, for plaintiff in error.

FRANCIS W. PETERSON, and I. KARL DAVIDSON, for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

On September 9, 1929, Godfrey Liss filed an application for adjustment of claim with the Industrial Commission against his employer, the Postal Telegraph Cable Company, Inc., claiming compensation for an injury received March 12, 1929. The injury complained of was caused by a blow on the left temple struck by John H. Meyers, his immediate superior. It is undisputed that at the time of the injury Liss was acting in the scope of his employment. A hearing was had before an arbitrator, who found that the injury had caused complete disability, which rendered

Liss wholly incapable· of work. The arbitrator made an award of $10.50 per week for 357 weeks and one week at $1.50, a pension of $25 per month during life and $798 medical and hospital expenses. On review the Industrial Commission sustained the award of the arbitrator and ordered it to stand as the decision of the commission. This decision of the Industrial Commission was affirmed by the circuit court of Cook county, and the employer has brought the case here for review by writ of error.

We need consider only the extent of Liss' disability, as all the points raised in the employer's brief relate to that one question. The question for determination is therefore a question of fact as to the total disability of Liss,. and the evidence consists of his own testimony and that of nine other witnesses, including one physician.

It appears from the evidence that Liss was about twenty-three years of age at the time of his injury and had worked for the employer for over eight years, starting as a messenger boy. There is no denial that Meyers struck him a severe blow in the face. After the injury Liss was troubled by a jerking and pulling down of his head, but despite this he continued to work with difficulty for two weeks. He then quit work, consulted a number of local physicians and later went to Mayo Brothers, in Rochester, Minnesota, where he stayed a month under observation and treatment. After returning to Chicago he went to a country place in Michigan for a month. Later he was treated in Chicago by Dr. Bayard Holmes for four months, three months of which time was spent in St. Luke's Hospital. His injury did not improve with treatment, his neck kept pulling down the same as at first, his head jerked back and he could not feed himself. Dr. Holmes was the only medical witness produced by either party, and his testimony was that Liss had a twitching of the face, a movement forward of the head, involving the shoulders and arms and at times almost the entire body. These movements came at frequent inter-

vals, of from one to two minutes apart, and were increased by excitement, questioning, or such things as feeling of the body or looking at the eyes or tongue. According to Dr. Holmes the condition of Liss had not changed materially from when he first treated him, although some days he would be better and other days worse. The treatment consisted of drugs and medicines, massages and adult therapy. At one time a stiff, hard collar was used to hold his head in a fixed position and at another time weights were used to pull his head backward. After describing the various treatments, Dr. Holmes concluded that Liss was suffering of traumatic neurosis—a nervous condition caused by an injury. He said there was no time limit in which to cure such an ailment in any way; that it may last a day or a lifetime, and that some cases recover after the payment of damages but others do not.

On the question of whether Liss is able to do any kind of work, he testified that he was not able to do work as a telegrapher. He said he had attempted to work in his brother-in-law's office, answering telephone calls, since his injury, but on account of his crippled condition they could not use him for that purpose. The evidence precluded the possibility of his again engaging in the work which he had been trained to do and no other employment which he could perform was suggested. His condition, as established by the testimony, indicates that it would be exceedingly difficult, if not impossible, for him to find employment in any gainful occupation, or, in his present condition, to successfully perform the duties of such an employment if he could secure it. The arbitrator, as well as the Industrial Commission, observed the condition of Liss and had an opportunity, other than by the testimony offered, to judge his physical and mental condition during the several days of hearings. The award was justified by the condition of the employee at the time of the hearing, and from the fact, as shown by the record, that since that time he had exhibited

no improvement in his condition. Whether his disability was caused entirely from the physical blow struck or a mental condition arising out of the injury makes no difference. *Armour Grain Co.* v. *Industrial Com.* 323 Ill. 80; *United States Fuel Co.* v. *Industrial Com.* 313 id. 590.

This case represents a type of injury which wholly and completely disables the employee and which may or may not be of a permanent character. In this respect it is to be distinguished from the more common types of injuries resulting in loss of limb or eyesight, which obviously are permanent injuries. The award made by the arbitrator and sustained by the Industrial Commission and circuit court was the only award which the evidence in the record would justify. If at any time in the future the condition of Liss should improve, the employer has its remedy, under the Workmen's Compensation act, to then appear and have the award modified or set aside. *United States Fuel Co.* v. *Industrial Com. supra.*

*Judgment affirmed.*