(No. 2537—

JULIUS J. GROSS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 9, 1940.*

SNAPP, HEISE & SNAPP, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

For more than a year prior to July 13, 1934, claimant was employed by the respondent as superintendent of the tailor shop at the Illinois State Penitentiary at Joliet, Illinois. While engaged in the duties of his employment, on the last mentioned date, claimant was brutally assaulted by certain inmates of the institution. He was struck in the jaw with a heavy iron object, knocked down, and rendered unconscious; was kicked, beaten and stabbed; he sustained a compound comminuted fracture of the lower left jaw, and all of his lower teeth were loosened. He also sustained a concussion of the brain, was bruised about the body and legs, sustained an injury to the sciatic nerve of the right leg, and was so badly beaten about the head, face, neck and chest that he was unrecognizable.

Dr. Frank J. Chmelik, the prison physician, rendered first aid within twenty minutes after the occurrence and had the patient removed to St. Joseph's Hospital at Joliet, where he remained about three weeks. While in the hospital and afterwards, claimant remained under the care of Dr. Chmelik. He was also treated by Dr. Joseph D. Talbot, a practicing dentist, who treated him for the trouble with his teeth, mouth and jaw. X-ray pictures of the jaw were taken on the day after the injury, but the swelling was so extensive and the physical condition of the claimant was so bad that it was impossible to do any irrigating of the jaw at that time. On July 17th arch bars were placed on the upper and lower jaws and wired to the teeth, and a head cast placed on the patient. On August 12th, on account of a severe attack of hay fever and asthma, the jaws were pulled loose and had to be rewired, and a new head cast placed, which remained in position until September 12th, when it was removed. Upon the suggestion of his doctors, claimant went to Arizona about October 1,

1934 and remained there for three or four months. On February 15, 1935 he returned to his regular work and worked four days. On March 12, 1936 he again resumed his former employment and continued therein until August 2, 1937. In March, 1937 his teeth were extracted and thereafter temporary and permanent dentures were prepared and fitted by Dr. I. Goldberg, at a cost of $265.00. In the fall of 1937 claimant went to the Mayo Clinic in Rochester, Minnesota for examination, and was advised that his disability was the result of a displaced inter-vertebral disc which produced pressure upon the nerve, and thereby caused the neurotic condition from which claimant suffered, and that an operation for the removal of such disc should be performed. In preparing him for such operation, the action of the gall bladder was paralyzed, and a preliminary operation on the bladder was required. By reason of such preliminary operation the claimant was not in condition for the operation for the removal of the inter-vertebral disc until March, 1938, when the same was performed.

The operation was a success, the pressure against the nerve was released, and the pain caused by such pressure was eliminated. Claimant's condition continued to improve, and by July 1, 1938 he was able to perform such work as was usually incident to his previous employment, although at the time of the last hearing herein, to wit, on April 23, 1940, he still had some disability and was required to wear a body brace.

Claimant's employment was as a superintendent of the tailor shop and his duties were mostly of a supervisory nature. During the two periods after the accident in which he resumed his previous employment, that is, during the four days in February, 1935, and between March 12, 1936 and August 2, 1937, although he performed such duties as were required of him, yet he continued to be disabled as a matter of fact and was finally given a discharge notice on October 7, 1937 for continued absence on account of illness.

Claimant was paid his regular salary of $135.00 per month from the date of his injury to October 1, 1934, and was also paid for the four days' work performed by him in February, 1935, and for the time he worked between March 12th, 1936 and August 2, 1937.

Claimant seeks to recover compensation for the following items to wit: temporary total incapacity for three separate periods; $265.00 for money paid to Dr. I. Goldberg for dental treatment and dentures; $882.52 for medical, surgical and hospital expenses incurred at the Mayo Clinic; and compensation for serious and permanent disfigurement to the head and face resulting from the permanent loss of teeth.

So far as appears from the record, all medical, surgical and hospital bills other than the bills incurred at the Mayo Clinic as aforesaid, and the aforementioned bill of Dr. Goldberg, have been paid by the respondent.

Although claimant performed the duties required of him during the two periods he worked after his injury, to wit, from February 15th, to February 19, 1935, and from March 12th, 1936 to August 2, 1937, yet the testimony shows that during all of the time from the date his injury to July 1, 1938, his nervous condition was bad; he developed a nervous twitching of the facial muscles around the lips; also a sciatic scoliosis of the right side; it was an effort for him to concentrate; his mind did not react quickly; he was restless and did not sleep well at night, and appeared to suffer a large part of the time; in short, he developed a traumatic neurosis. His condition finally became so bad that on October 7, 1937, as previously stated, he was discharged on account of continued absence from duty on account of illness.

In considering a disability resulting from traumatic neurosis, our Supreme Court in the case of *Postal Telegraph Co.* vs. *Ind. Com.*, 345 Ill. 349, said:

"Whether his disability was caused entirely from the physical blow struck or from a mental condition arising out of the injury makes no difference."

The same rule was applied in the case of *U. S. Fuel Co.* vs. *Ind. Com.*, 31 Ill. 590, and in the case of *Armour Grain Co.* vs. *Ind. Com.*, 323 Ill. 80.

The fact that claimant worked four days in February, 1935, and also worked from March 12, 1936 to October 8, 1937, makes it questionable whether his disability is properly classified as temporary total or permanent.

However, claimant's disability during the time he was unemployed as aforesaid was total, and it therefore can make no difference under the facts in this case whether the same be classified as temporary or permanent.

From a consideration of all of the facts in the record, we find as follows:

1. That on July 13, 1934 the claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State; that on said date claimant sustained accidental injuries which arose out of and in the course of his employment; that notice of the accident was given to respondent and claim for compensation on account thereof was made within the time required by the provisions of such Act; that claimant's annual earnings were $1,620.00, and his average weekly wages were $31.15; that claimant at the time of the injury was fifty-four years of age, was married, and had no children under the age of sixteen years; that all necessary first aid, medical, surgical and hospital services have been provided by the respondent, except the services rendered at the Mayo Clinic as aforesaid, and the dental services of Dr. Goldberg as aforesaid.

2. That claimant was totally disabled from the date of his injury, to wit, July 13th, 1934, to February 15, 1935; also from February 19th, 1935 to March 12, 1936; also from August 3rd, 1937 to July 1, 1938; a total of One Hundred Thirty-three and one-seventh (133 1/7) weeks.

3. That claimant was paid his regular salary of $135.00 per month for the months of July, August and September, 1934. Such payment for that portion of the month of July subsequent to the date of claimant's injury, to wit, July 13th, as well as for August and September, was for non-productive time and must therefore be considered as payment of compensation, making a total of compensation paid by respondent as aforesaid in the amount of Three Hundred Forty-six Dollars and Fifty Cents ($346.50).

4. That a personal examination of the claimant by the court shows that he has sustained no serious and permanent disfigurement to the head face, within the meaning of those words as used in the Compensation Act.

5. That claimant is entitled to have and receive from respondent under the provisions of the Workmen's Compensation Act the following amounts, to wit:

a) For total disability, 133 1/7 weeks, at $15.00 per week, less $346.50 heretofore paid by respondent as aforesaid, to wit, Sixteen Hundred Fifty Dollars and Sixty-four Cents ($1,650.64).

b) For money paid to Dr. I. Goldberg, for dental services and dentures, the sum of Two Hundred Sixty-five Dollars ($265.00).

c) For expenses incurred for medical, surgical and hospital services at the Mayo Clinic, the sum of Eight Hundred Eighty-two Dollars and Fifty-two Cents ($882.52);—in all, the sum of Twenty Seven Hundred Ninety-eight Dollars and Sixteen Cents ($2,798.16).

We further find that all of the expenses incurred at the Mayo Clinic as aforesaid have been paid by the claimant except the sum of Two Hundred Sixty Dollars ($260.00), and that said sum of $260.00 remains due and unpaid to said Mayo Clinic.

We further find that the compensation for total disability as aforesaid is payable in weekly installments of $15.00 per week commencing on July 14, 1934, and excluding the time during which claimant was employed as hereinbefore set forth; that all of the compensation to which claimant is entitled as above has accrued at this time, and he is therefore entitled to an award in a lump sum for the total amount due him as herein set forth.

Award is therefore entered in favor of the claimant for the sum of Twenty-seven Hundred Ninety-eight Dollars and Sixteen Cents ($2,798.16), payable as follows, to wit: To the claimant, Julius J. Gross, the sum of Twenty-five Hundred Thirty-eight Dollars and Sixteen Cents ($2,538.16); and to the claimant, Julius J. Gross, for Mayo Clinic, the sum of Two Hundred Sixty Dollars ($260.00).

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," (Illinois Revised Statutes, 1939, Bar Assn. Ed., Chap. 127, Pars. 180-181), and being subject also to the terms of an Act entitled "An Act Making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Monies Until the Expiration of the First Fiscal Quarter After the Adjournment of the Next Regular Session of the General Assembly," approved July 1, 1939 (Session Laws 1939, page 117); and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Fund in the manner provided by the foregoing Acts.