506

(No. 39263.—

REPUBLIC STEEL CORPORATION, Appellant, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(JAMES WRIGHT, Appel-
lee.)

*Opinion filed November 19, 1965.*

STEVENSON, CONAGHAN, HACKBERT, ROOKS AND PITTS,
of Chicago, (HARLAN L. HACKBERT, DOUGLAS F. STEVEN-
SON, and PAUL NOLAND, of counsel,) for appellant.

HENRY TIERSKY and SCOTT J. VITELL, both of Chicago,
(SIDNEY Z. KARASIK, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the
court:

An arbitrator for the Industrial Commission found the
claimant, James Wright, to be "wholly and permanently in-
capable of work," and entered an award for permanent
total disability. On review the commission affirmed. Repub-
lic Steel Corporation, the employer, filed a petition for
*certiorari* to review the decision of the commission. That

petition was dismissed on procedural grounds by the circuit court of Cook County. Thereafter, upon writ of error this court reversed the order of dismissal, and remanded the case to the circuit court with directions to proceed with a hearing on the merits. (30 Ill.2d 311.) After a hearing the circuit court found that the decision of the commission was not contrary to the manifest weight of the evidence, and affirmed the award. The employer has appealed.

It is undisputed that on April 20, 1960, the claimant suffered an accidental injury which arose out of and in the course of his employment. He fell ten feet from the roof of a furnace to the floor and landed on his head. He recovered consciousness in a hospital about an hour and a half later. His scalp was cut and his right shoulder was broken. His back and left wrist were also injured. He remained in the hospital for ten days. On June 1, 1960, he went out to the steel mill, and "got in a daze." He "woke up" in a bed in the company's clinic, and was again hospitalized until June 7, 1960. The employer furnished medical, surgical, and hospital services, and paid $360 as compensation for temporary total disability. It admits that there may be some permanent partial disability, but it contends that the medical evidence does not justify an award for permanent total disability.

The claimant testified before the arbitrator and before the commission. He described the circumstances of the accident, his two periods of hospitalization, and the treatment that he received. He testified that he suffered from dizziness every day and from headaches every two or three days; that his back became numb if he sat for a long time, and that when he walked five or six blocks, or when he bent over, he experienced a sensation in the top of his head "like I am going to pass out." Since the accident he stutters and has nervous twitches in his face and hand. Before the accident he neither stuttered nor had twitches. When he testified before the commission on September 28, 1961, the claimant testified that he still experienced the same symptoms.

Dr. Robert Lewy, an otolaryngologist, testified before the arbitrator. He had examined the claimant on May 16 and 18, 1960. He administered a caloric test which produced an abnormal response in the left ear, which was evidence of injury to "the organ of equilibration, the semicircular canals or other associated nerve tracts in the brain." It was his opinion that there was a causal connection between the claimant's injury and the condition that he found. He testified that this condition could be permanent, "but in all fairness to the total question, the other possibilities are there, too." He could not predict with certainty how long the symptoms were going to last, but he testified that if they had persisted until the date that he testified, (March 6, 1961), "the likelihood of their persisting for a much longer time is very real."

For the employer, Dr. Eric Oldberg testified before the arbitrator that he had performed a neurological examination of the claimant on October 16, 1960. He found that the claimant stuttered in speaking; that "his cranial nerves were all normal, including his optic fundi, the movements of his eyes and the gross hearing in each ear. The neurological examination of his trunk and extremities with respect to motive power, reflex action, sensation and coordination was normal." He found no objective pathology to support the claimant's subjective symptoms, and he concluded that there was no objective evidence of damage to the nervous system. He did not administer a caloric test, and he testified that if such a test produced an abnormal result "the test either had been wrongly performed or the nerve is destroyed." As we understand the record, he eliminated the latter possibility because the claimant's hearing was grossly normal.

The employer also offered in evidence before the commission a written report of Dr. Richard E. Heller, who examined the claimant on June 19, 1961. Dr. Heller made a neurological examination and took X-ray films. He found

that the "lingual movements" were normal; that there was no nystagmus; and that reflexes, the Romberg sign and the past pointing test were normal. He found some restriction of movement of the head on the neck. The X rays taken of the spine were normal. Dr. Heller was "unable to find any evidence of intra-cranial trauma or any evidence of any condition traumatic in origin which might explain the subject's complaints referrable to the back, neck or left wrist." He concluded that "the subject is quite able to perform any duties which he was accustomed to do prior to the accident on April 20, 1960."

The employer had sent the claimant to three other doctors for examination, but none of them were called to testify nor were their reports put before the commission.

The employer contends that there is no evidence sufficient to sustain a finding of permanent total disability. This contention rests primarily upon the fact that Dr. Lewy did not state positively that the claimant's injuries would be permanent. His testimony is therefore characterized as "speculation, imagination and conjecture." But it is not true as a matter of law that an award for permanent disability can be sustained only if a medical expert testifies that the condition is certainly irreparable. In *Postal Telegraph Cable Co.* v. *Industrial Com.* 345 Ill. 349, the only medical witness testified that "* * * there was no time limit in which to cure such an ailment in any way; that it may last a day or a lifetime, and that some cases recover after the payment of damages but others do not." (345 Ill. at 351.) In sustaining an award for permanent total disability, the court said: "This case represents a type of injury which wholly and completely disables the employee and which may or may not be of a permanent character. In this respect it is to be distinguished from the more common types of injuries resulting in loss of limb or eyesight, which obviously are permanent injuries. * * * If at any time in the future the condition of Liss should improve, the employer has its remedy,

510

under the Workmen's Compensation act, to then appear and have the award modified or set aside." 345 Ill. at 352. See also, *Ford Motor Co. v. Industrial Com.* 355 Ill. 490; *United States Fuel Co. v. Industrial Com.* 313 Ill. 590.

Nor do we agree with the further contention that the award is against the manifest weight of the evidence. What the employer regards as uncertainty and speculation in the testimony of Dr. Lewy may have been regarded by the commission as an indication of reliability. And the commission may have felt that the tests administered by the two doctors whose examinations of the claimant at the request of the employer were put before the commission were not directed to the type of disability primarily involved. "This court will not discard permissible inferences drawn by the commission merely because it might have drawn other inferences from the facts." (*Clifford-Jacobs Forging Co. v. Industrial Com.* 19 Ill.2d 236, 245.) And this court has often held "* * * that where expert medical witnesses disagree, the courts will not undertake to decide where the preponderance of the evidence lies or which medical experts are more worthy of belief." *Moergen v. Industrial Com.* 394 Ill. 383, 389-90; see also *Boutwell v. Industrial Com.* 408 Ill. 11, 18; *Frenzel Construction Co. v. Industrial Com.* 31 Ill.2d 310, 312.

The judgment of the circuit court of Cook County is affirmed.