The People *ex rel.* William J. Scott, Attorney General, *et al.*, Plaintiffs-Appellants, *v.* Dravo Corporation *et al.*, Defendants-Appellees.

(No. 72-92;

Fifth District—March 14, 1973.

*Rehearing denied April 24, 1973.*

William J. Scott, Attorney General, of Chicago, (Warren K. Smoot, Assistant Attorney General, and Fred F. Herzog, of counsel,) for appellants.

Carey, Filter & White, of Chicago, (Edward M. White and Edmund P. Boland, of counsel), for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The question in this appeal is, literally, where is Dog Island?

Although the Illinois Constitution of 1970 is silent on the subject,

article I of the Illinois Constitution of 1870 fixes the boundary line of Illinois with Kentucky along the Ohio River on its northwestern shore. When Virginia ceded to the United States the Northwest Territory, in the year 1784, she retained the title to the bed of the Ohio River to the low-water mark on its north or northwest side. When Kentucky became a State she succeeded to the rights of Virginia.

It is stated in *Joyce-Watkins Co. v. Industrial Com.,* 325 Ill. 378, 156 N.E. 346, that "The rule is that when a stream dividing coterminus States alters its channel by a gradual or imperceptible process of wear or alluvion the boundary shifts with the stream. Where a river is declared to be the boundary between States the river as it runs continues to be that boundary although it may have changed its course from natural causes by imperceptible wear, but if it suddenly changes its course or deserts its original channel the boundary remains in the middle of the deserted river bed. [Citations.] Considering the analogy of such a boundary line to one designated as 'low-water mark,' constituting the boundary between Illinois and Kentucky, we are of the opinion that in the absence of a showing of sudden or perceptible changes in the course of the river the low-water mark of the Ohio river as referred to in the designation of the boundary between Illinois and Kentucky is to be determined by the evidence as to the point to which the waters of that river have receded at its lowest stage."

In the case at hand complaint for declaratory judgment was filed in the circuit court of Pope County, Illinois by the People of the State of Illinois *ex rel.* William J. Scott, Attorney General, The Department of Revenue of the State of Illinois and Barney J. Grabiec, Director of the Department of Labor of the State of Illinois as plaintiffs against Dravo Corporation, a corporation, S. J. Groves & Sons Company, a corporation and Gust K. Newberg Construction Company, a corporation as defendants. The complaint recites that defendants have entered into contracts with the Army Corps of Engineers to perform construction work on Dog Island, alleged to be in Pope County within the territorial limits of the State of Illinois. It further alleges that the boundary of the State of Illinois extends to a line which represents the low-water mark on the northwest shore of the Ohio River and the low-water mark has at times past and times relevant to determining the Illinois-Kentucky boundary been located such that Dog Island was not an island but rather was attached by dry land to the State of Illinois. By reason of the location of the construction work by defendants in the State of Illinois the defendants are required to comply with the laws of the State of Illinois, including the Illinois Income Tax Act and Unemployment Compensation Act. Plaintiffs have demanded defendants' compliance with those statutes

but defendants have advised the plaintiffs that they consider Dog Island to be within the State of Kentucky and that therefore their work will be governed by the laws of Kentucky and they are not liable to comply with the Illinois Income Tax Act or Unemployment Compensation Act. The complaint prays a declaratory judgment that Dog Island is within the territorial limits of the State of Illinois and that defendants are required to comply with the Illinois Income Tax Act and Unemployment Compensation Act.

Defendants appeared together and filed a motion to dismiss the complaint upon the grounds, as pertinent to this appeal, (1) that Dog Island is part of and under the jurisdiction of the State of Kentucky which has not been made a party to the proceeding; (2) in view of the conflicting claims of jurisdiction over Dog Island a complete determination of the issues may not be had without the presence in the case of the State of Kentucky and it is an indispensable party; (3) because of the controversy between the State of Illinois and the State of Kentucky the Supreme Court of the United States has exclusive jurisdiction of the case; and (4) inasmuch as the decision of the Illinois court in the present posture of the case cannot constitute a bar to proceedings by Kentucky in its courts for collection of Kentucky taxes, it would be a denial of defendants' rights to due process under the fourteenth amendment to the Constitution of the United States for the Illinois court to maintain or exercise jurisdiction in the matter. Attached to the motion to dismiss is an affidavit of an attorney for the defendants which states that the three defendants are a joint venture engaged in the performance of a contract for the United States Government in the Ohio River on an island known as Dog Island; that various departments of the State of Kentucky have contended that Dog Island is within the Commonwealth of Kentucky and the joint venturers are therefore subject to certain taxes imposed by said State as more fully appears from exhibits A and B attached. Exhibit A to the affidavit purports to be a letter from the Commissioner of Revenue of Kentucky addressed to the three defendants. The letter states in essence that it has come to the attention of the department that the defendants are engaged in a joint venture on the Ohio River in the vicinity of Dog Island located near Smithland; since Kentucky has jurisdiction over the Ohio River to the low-water mark on the northern shore defendants will be liable for sales and use taxes on tangible personal property used and consumed in the construction operations and for the withholding of income tax on salaries paid to employees while engaged in the project and for corporation income tax on profits from the operation. Exhibit B to the affidavit purports to be a letter from the General Counsel of the Bureau of Employment Security of Kentucky.

It is addressed to an attorney for the defendants and notifies him that Kentucky claims the defendants will be subject to unemployment insurance tax on wages paid to employees in the construction of the Ohio River dam at or near what is known as "Dog Allen" near Smithland, Kentucky. The letter also claims that "Dog Allen" is south of the Ohio River low-water mark of the river's northwest shore and consequently is a part of the Sovereign Commonwealth of Kentucky and has been recognized as such since the border line was established. The letters described as exhibits A and B are both dated almost a month after the filing of the complaint.

After argument on the motion the trial court entered an order dismissing plaintiffs' complaint. The only finding in the order was as follows:

"The Court Finds that since the Courts Order in this case could not bind the State of Kentucky, to proceed further would be a denial of due process of law."

Plaintiffs appeal. We reverse.

The issue here, as in the court below, revolves around the associated questions of the judicial jurisdiction of the Illinois court over the cause of action as alleged in plaintiffs' complaint and whether the defendants will be deprived of due process of law as guaranteed in the fourteenth amendment to the United States Constitution if the case is permitted to proceed in the State court.

This suit is by the State of Illinois against three corporations with which it has a close affinity, one is chartered in Illinois and two possess certificates of authority to conduct business in Illinois. The applicable statute grants the latter two the same rights and privileges as domestic corporations and subjects them to the same duties, restrictions, penalties and liabilities. (Ill. Rev. Stat., ch. 32, sec. 157.103.) The action, then, is essentially one between a State and its corporate citizens. There is no question of notice and opportunity for hearing.

Defendants' principal reliance is placed upon the case of *Western Union Telegraph Co. v. Commonwealth of Pennsylvania*, 368 U.S. 71, 82 S.Ct. 199, 7 L.Ed.2d 139. In that case the State of Pennsylvania, proceeding in its State court, sought to escheat certain obligations of Western Union, consisting of unclaimed telegraphic money orders and the like. The unclaimed monies were alleged to be properties within Pennsylvania. By reason of the unclaimed money orders large sums of money due from Western Union to the payees of those money orders had accumulated in the company's offices and bank accounts throughout the country. Pennsylvania's complaint was directed specifically against the amount of undispersed money held by Western Union arising out of money orders bought in Pennsylvania offices to be transmitted to payees

in Pennsylvania and other States, chiefly other States. Western Union was a New York corporation with its principal place of business in that State. It contested Pennsylvania's right to escheat the funds, urging that a judgment of escheat for Pennsylvania in its courts would not protect the company from multiple liability either in Pennsylvania or in other States. It argued that senders of money orders and holders of drafts would not be bound by the Pennsylvania judgment because service by publication did not give the State court jurisdiction. The Supreme Court declined consideration of the adequacy of notice and validity of service on the individual claimants by publication, rather, they found a far more important question raised by the record—whether Pennsylvania had power at all to render a judgment of escheat which would bar New York or any other State from escheating the same property. They noted that their prior opinions have recognized that when a State court's jurisdiction purports to be based on the presence of property within the State, the holder of such property is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment. Upon applying that principle the court held that Western Union had been denied due process by the Pennsylvania judgment unless the Pennsylvania courts had power to protect Western Union from any other claim, including the claim of the State of New York; that the obligations are property "within" New York and are therefore subject to escheat under its laws. Since New York was not a party to the proceeding in the State court and could not have been made a party, Western Union was not protected by the Pennsylvania judgment, because a State court judgment need not be given full faith and credit by other States as to parties and property not subject to the jurisdiction of the court that rendered it. The court's opinion was apparently in some conflict with its holding in *Standard Oil Co. v. State of New Jersey*, 341 U.S. 428, 71 S.Ct. 822, where it said that "The debts or demands  *  *  *  having been taken from the appellant company by a valid judgment of New Jersey, the same debts or demands against appellant cannot be taken by another state. The Full Faith and Credit Clause bars any such double escheat." But that case was distinguished because an actual controversy between States was found to exist in the Western Union case, as demonstrated by the fact that the State of New York was present and participated in the case before the Supreme Court as *amicus curiae* and had, in fact, already escheated some of the funds sought by Pennsylvania. The court concluded by stating that multiple claims of power to escheat should be considered only when all interested States—along with all other claimants—can be afforded a full hearing.

Since the Pennsylvania courts, with no power to bring other States before them, cannot give such hearing their judgments cannot protect Western Union from having to pay the same obligation twice and such judgment therefore cannot stand.

Defendants align the case before us with *Western Union Telegraph Co.* contending that since Kentucky is not and cannot be a party in the Illinois court, Kentucky need not accord full faith and credit to the Illinois judgment and will be free to pursue remedies in its own courts. Accordingly, the argument runs, defendants will be subjected to taxation by two States for the same activity and thereby deprived of due process of law.

■■ The plaintiffs, for their part, rely upon the case of *Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186. In that case the petitioners, in 1956, brought an action against the respondent in a Nebraska court to quiet title to certain bottom land situated on the Missouri River. The main channel of that river forms the boundary between the States of Nebraska and Missouri. The Nebraska court had jurisdiction over the subject matter of the controversy only if the land in question was in Nebraska. Whether the land was Nebraska land depended entirely upon a factual question—whether a shift in the river's course had been caused by avulsion or accretion. The respondent appeared in the Nebraska court and through counsel fully litigated the issues, explicitly contesting the court's jurisdiction over the subject matter of the controversy. After a hearing the court found the issues in favor of the petitioners and ordered that title to the land be quieted in them. Upon appeal the Supreme Court of Nebraska affirmed. The State Supreme Court specifically found that the rule of avulsion was applicable, that the land in question was in Nebraska, that the Nebraska courts therefore had jurisdiction of the subject matter of the litigation, and that title to the land was in the petitioners. Two months later the respondent filed a suit against the petitioners in a Missouri court to quiet title to the same land. Her complaint alleged that the land was in Missouri. The suit was removed to a Federal District Court by reason of diversity of citizenship. The District Court after hearing evidence expressed the view that the land was in Missouri, but held that all the issues had been adjudicated and determined in the Nebraska litigation, and that the judgment of the Nebraska Supreme Court was *res judicata* and "is now binding upon this court." The Court of Appeals reversed, holding that the District Court was not required to give full faith and credit to the Nebraska judgment, and that normal *res judicata* principles were not applicable because the controversy involved land and a court in Missouri was therefore free to retry the question of the Nebraska court's jurisdiction

over the subject matter. The Supreme Court granted *certiorari,* reversed the judgment of the Court of Appeals and affirmed the judgment of the District Court. The court noted that the full faith and credit clause of the constitution generally requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it. To the respondents contention that the Federal Court in Missouri was free independently to determine whether the Nebraska court in fact had jurisdiction over the subject matter, *i.e.,* whether the land in question was actually in Missouri, the court stated that while it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of the Supreme Court have carefully delineated the permissible scope of such an inquiry. "From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." This rule was held to be applicable to questions of jurisdiction over the person, as well as jurisdiction over the subject matter and would also apply to a case involving real property. It was argued that an exception to a rule of judicial finality should be made in cases involving real property because of the Supreme Court's emphatic expressions of the doctrine that courts of one State are completely without jurisdiction directly to effect title to land in other States. This was rejected with the statement: "But the location of land, like the domicile of a party to a divorce action, is a matter 'to be resolved by judicial determination.'"

The court in *Durfee* went on to emphasize that all that was determined in the Nebraska litigation was title to the land in question as between the parties to the litigation there. They note that nothing here decided, and nothing that could be decided in litigation between the same parties in Missouri, could bind either Missouri or Nebraska with respect to any controversy they might have, now or in the future, as to the location of the boundary between them or as to their respective sovereignty over the land in question. Either State may at any time protect its interest by initiating independent judicial proceedings in the Supreme Court.

We see no need here for devoting effort to the definition of judicial jurisdiction or due process of law. The generally understood meanings and applications of those terms will suffice for this appeal. In our view, the real issue that emerges is essentially factual. The issues here are closely aligned with those in *Durfee v. Duke* and we deem the principles

applied in that case controlling rather than those in *Western Union Telegraph Co. v. Commonwealth of Pennsylvania.* Upon which side of the boundary line between the States of Illinois and Kentucky does Dog Island lie? If in Illinois, then the circuit court of Pope County does have jurisdiction and the defendants, having had notice and opportunity to appear and defend, will not be deprived of due process if the case proceeds in that court. If it is determined that it lies in Kentucky, then the Illinois court would be without judicial jurisdiction to render a valid judgment since jurisdiction of Illinois courts cannot constitutionally extend beyond its own boundaries.

■■ It is so distinctly clear as to require no citation of authority that only the parties to a case will be bound by any judgment order that may ensue from litigation. This is pointedly so with respect to any interest that is now or may be claimed by the State of Kentucky. That State is not a party. The complaint of the plaintiffs does not involve Kentucky in any way. The defendants cannot avoid their prospective liability to the State of Illinois by saying only that they might be liable to Kentucky for the same types of taxes imposed on the same activity described in plaintiffs' complaint. Yet, this is essentially their position here. Such an assertion on their part is not sufficient to deny an Illinois court the right to inquire into its judicial jurisdiction over the subject matter here. The allegation of the complaint is that Dog Island is, and has been at all times pertinent to the case, a part of Illinois. It is a question of fact and accordingly demanding of proof. Defendants' motion to dismiss admits the location of Dog Island as the complaint alleges it to be. The affidavit and exhibits A and B thereto attached are insufficient to refute the complaint. The affidavit states only that various departments of the State of Kentucky have claimed that Dog Island is in Kentucky and defendants are subject to its taxes. The exhibit A letter claims notice that defendants are engaged in a joint venture in the "vicinity" of Dog Island and that Kentucky claims jurisdiction to the low-water mark on the northern shore of the Ohio River. The exhibit B letter notifies defendants that Kentucky claims defendants will be liable for taxation by it in the construction of the Ohio River dam "at or near what is known as Dog Allen." [sic] It also states that "Dog Allen" [sic] is south of the Ohio River low-water mark on the river's northwest shore and therefore part of Kentucky.

The State of Illinois is not seeking to tax property or activity in Kentucky, nor is it claiming the power to tax because of some incidence or connection with some activity in Kentucky. Rather, it is asserting judicial jurisdiction over activity wholly within its own boundary. If the plaintiffs succeed in establishing as fact what they allege in their complaint, clearly

they will be entitled to the relief they seek. Nothing appears at this juncture that will deprive the Illinois court of jurisdiction. Indisputably, the defendants will not be foreclosed from proof that, as a matter of fact, Dog Island is a part of Kentucky, and the Illinois court is accordingly without jurisdiction to render a valid judgment. But the Illinois court, under the rules of judicial jurisdiction and *res judicata* discussed in the *Durfee* case, may receive evidence regarding the location of Dog Island with reference to the State boundary line, and therefrom make a determination of its jurisdiction.

We do not see this action as an intrusion into the exclusive jurisdiction over disputes between States conferred upon the Supreme Court by article III, section 2 of the Constitution of the United States. There is no legal dispute with respect to the location of the Illinois-Kentucky boundary. The two States are not in contention here nor are the issues tendered in the complaint sufficient to engage them in controversy. The State of Illinois cannot in this proceeding divest Kentucky of its claims to territory nor can it change the existing boundary line. It is not attempting to do so.

The situation here is analogous to that in the case of *Joyce-Watkins Co. v. Industrial Com.* where the court met an argument similar to that of defendants' here by saying: "We would not be justified in this proceeding, where the State of Illinois is not represented, to determine the boundary line between this State and the State of Kentucky. That question is of far too great importance to be heard without the appearance of the State. It is sufficient in this proceeding to determine whether or not the (Industrial) commission and the circuit court were justified in holding that Minley was within the jurisdiction of Illinois (at the time of an injury)." Like principles were also applied in *Uhlhorn v. U.S. Gypsum Co.* (8th Cir. 1966), 366 F.2d 211, *cert. denied* (1967) 385 U.S. 1026 where a contention was made that a tract of land in question was beyond the jurisdiction of the court because of a boundary change wrought by accretion in a river bed. Confronted with this argument the court held that the District Court had power to make a determination of its jurisdiction and the Circuit Court of Appeals would have jurisdiction to review the finding. The court said: "* * * the issues here do not involve the changing or establishing of the boundary line between sister states so that original jurisdiction lies with the Supreme Court of the United States. [Citation.] We simply decide the location of an established boundary. [Citations.]"

We cannot agree that this case bears a similarity to that of *Western Union Telegraph Co. v. Commonwealth of Pennsylvania.* It is distinguishable not only on the basis of the parties involved but the subject

matter as well. In the *Western Union Telegraph Co.* case the subject matter was intangible personal property which a State sought to escheat. Once escheated the property would disappear with the result that Western Union could be left liable over to other clamants in other States and thereby deprived of its property without due process of law. In contrast, whatever the outcome of this case, Dog Island, being realty, will doubtless remain intact and in place and the State of Kentucky will be free at any time to litigate any claims it may have respecting its boundary rights and territorial integrity.

■■  Other matters raised by defendants in their motion to dismiss were not ruled upon by the trial court and accordingly we will not pass upon them here.

■■  For the foregoing reasons we find that the defendants will not be deprived of due process of law if the case proceeds in the circuit court of Pope County, Illinois. Accordingly, the order of the circuit court of Pope County, Illinois dismissing plaintiffs' complaint is reversed and the cause remanded for further proceedings.

Reversed and remanded.

G. MORAN, P. J., and CREBS, J., concur.