KISSELL v. STEVENS.

Opinion delivered May 12, 1924.

1. COURTS—DECISIONS OF STATE BOUNDARIES.—State courts are con-concluded on questions of State boundary lines by the decisions of the Supreme Court of the United States.

2. STATES—BOUNDARY LINE.—The boundary line between the States of Arkansas and Tennessee is the middle of the main channel of navigation in the Mississippi River as it existed at the treaty of peace between the United States and Great Britain in 1783, subject to such changes as have occurred since that time through natural and gradual processes.

3. STATES—BOUNDARIES—AVULSION.—Where an island in the Mississippi River, when formed, was on the east side of the main channel, and within the boundaries of Tennessee, the jurisdiction of that State was not altered by a change of the main channel by avulsion from the west side of the island to the east side.

Appeal from Mississippi Chancery Court, Chickasawba District; *Archer Wheatley*, Chancellor; affirmed.

*Davis, Costen & Harrison* and *J. A. Tellier*, for appellant.

The facts in this case are on all-fours with those in the case of *St. Louis v. Rutz*, 128 U. S. 226, 34 L. ed. 941, and this case is ruled absolutely by the court's deci-

sion in that case. An examination of the original government plat or survey of township 16 north, range 13 east, 5th principal meridian, Arkansas, in connection with plaintiff's exhibit C, will show that, as late as 1847, at which time the boundary line between Arkansas and Tennessee was determined, the middle of the main channel of the Mississippi River was east of the area on which the lands in suit are now situated, and that area was therefore included within the boundaries of the State of Arkansas. The burden is upon appellees to show any subsequent change in this boundary line at the point in question. 246 U. S. 158, 63 L. ed. 638. The beds of navigable rivers in the State belong to the State. 30 How. 212, 11 L. ed. 565; 113 Ark. 409. Islands formed on the beds of navigable rivers, subsequent to the admission of the State into the Union, belong to the State in which the river is located. C. & M. Dig., § 6796; 53 Ark. 314, 323; 227 U. S. 229, 57 L. ed. 490; 112 Iowa 714, 58 L. R. A. 673, and notes. Title by accretion is title by operation of law, which each State determines for itself. 138 U. S. 254; 94 U. S. 324, 34 L. ed. 951. Accretion is the increase of real estate by the addition of portions of soil by gradual deposition, through the operation of natural causes to that already in the possession of the owner. 53 Ark. 323. The doctrine of accretion has no application to a temporary denudation of a river bed, to a moving island, or to a moving mass of alluvial deposits which travels more than a mile within a limited number of years from one State to another, the progress not being imperceptible in a legal sense. Gould on Waters, 3d ed., 311; 116 U. S. 423; 138 U. S. 226; 134 Mo. 631. Under the law of this State, the point at which accretion begins on navigable rivers is the high-water mark, since this is the point at which private ownership ends and at which the title of the State begins. Any formations or additions upon land belonging to the State inure to the State. 61 Ark. 435, 436; 73 Ark. 199.

*E. E. Alexander* and *Little, Buck & Lasley,* for appellee.

Counsel, in seeking to show the similarity between this case and the case of *St. Louis* v. *Rutz,* 128 U. S. 226, apparently overlooks the fact that the court, in its finding of fact No. 18, found that the original island was washed away prior to the change of the channel from the east side to the west side of the river, and that the island in suit formed east of the main channel of the river, and after the original island had washed away. See also page 250 of that report, and 34 L. ed. 951. We think this case is controlled by the decision in *Davis* v. *Anderson-Tulley Company,* 252 Fed. 681. See also 270 Fed. 110. That the boundary between the States of Tennessee and Arkansas is the main navigable channel of the Mississippi River, or what is known as the "thalweg," is so well established that citation of authorities appears to be useless. See, however, 246 U. S. 161, 62 L. ed. 638.

McCulloch, C. J. This is an action originally instituted at law by appellant against appellees to recover a tract of land which was formed as an island, or a portion of an island, in the Mississippi River. The cause was, without objection, transferred to the chancery court and proceeded there to a final decree in favor of appellees.

Appellant claims that the land in controversy lies within the jurisdiction of the State of Arkansas, and he asserts title under two deeds, one executed by the State Land Commissioner pursuant to statute authorizing the sale of islands in navigable streams (Crawford & Moses' Digest, §§ 6796 *et seq.*), and the other a deed from the St. Francis Levee District pursuant to the statute donating State lands to that agency. Acts 1899, p. 48. On the other hand, the contention of appellees is that the land in controversy is situated within the jurisdiction of the State of Tennessee, and they claim title under a grant from the State of Tennessee to W. T. Tate in the year 1860, and under mesne conveyances from Tate to the ancestor of appellees, it being alleged that the original grant conveyed title to an island in the Mississippi River

between the Missouri and Tennessee shores north of the present line between Arkansas and Missouri, and that the particular land in controversy was formed as an accretion to said island.

It is thus seen that on both sides of the controversy it is conceded that the *locus in quo* is a formation in the Mississippi River, and the controversy arises as to the *situs* at the time of its formation, whether it was in the jurisdiction of the State of Arkansas or within the jurisdiction of the State of Tennessee. Appellant claims that it was formed as an island on the Arkansas side of the boundary line, whilst appellees claim that the land was formed on the Tennessee side of the boundary, and that it was formed as an accretion to the island in the channel of the river north of the Arkansas-Missouri line and gradually extended southward across that line.

The facts of the case, in part undisputed and in other respects established by a preponderance of the evidence, are as follows: Prior to the year 1860 there was an island in the Mississippi River known as Island No. 20, lying north of the Arkansas-Missouri line, between the Missouri and Tennessee shores. This island was on the east, or Tennessee side, of the main channel of the river; there was a narrow stream or chute between the island and the Tennessee shore. The land began to form in the river by gradual deposits on the south side of this island and from year to year extended down stream, across the Arkansas-Missouri line, until a large body of land was formed south of that line between the Arkansas and Tennessee shores. The land in controversy is a part of the land thus formed south of the Arkansas-Missouri line, between the Arkansas and Tennessee shores. During this process of formation a considerable portion, if not all, of Island No. 20 was washed away, but there is a controversy as to whether or not this applies to all of the original island. The conclusion reached on the law applicable to the facts of the case renders it unnecessary for us to settle that controversy.

A considerable portion of the particular tract in controversy is actually occupied by appellees, and is cultivated in crops of corn and cotton. The part in controversy lies on the east side of the island, the larger portion of the island lying between that and the Arkansas shore. At the time of the formation of the land by extension of the deposit southward to its present limits, the main channel of the Mississippi River still remained on the west side of the formation, between it and the Arkansas shore line. But some time between the years 1908 and 1913—probably about the year 1912—the main channel changed and broke through the chute on the Tennessee side, thus changing the main channel of the river from its old location between the island and the Arkansas shore to the east side of the island, and the main channel is still thus located. The original channel on the west side of the island became, after the change, a mere chute, and filled up and narrowed from year to year, becoming non-navigable except during times of high water, and finally filled up entirely at the upper end. There is still a narrow channel there, which has very little water in it during dry seasons, the original Arkansas shore line still forming the west boundary of the chute, and being fronted by a wide mud-bar running out from the island to the east side of the chute.

One of the parties (the appellant) claims title, as before stated, under grant from the State of Arkansas, while the others claim under grant from the State of Tennessee. The facts thus established bring the case within principles of law too well established to call for extended discussion. Appellant is the plaintiff in the action, and must recover, if at all, on the strength of his own title, and not on the weakness of the title of his adversaries. If the lands in controversy lie within the boundaries of the State of Arkansas, appellant has acquired title thereto, and is entitled to a recovery. On the other hand, if the lands lie within the boundaries of the State of Tennessee, appellant has no title, and is not entitled to recover, regardless of the question whether or

not appellees have acquired title to the lands in contro-versy as accretion to the land originally granted by the State of Tennessee to their ancestor, or whether the lands were formed, not as an accretion, but as a separate forma-tion in the bed of the Mississippi River on the Tennessee **side.**

On the question as to the boundary line between the States of Arkansas and Tennessee, we are concluded by the decisions of the Supreme Court of the United States on that subject. The boundary line between the two States has been fixed by the treaty of 1763 between Eng-land, France and Spain, by the treaty of peace of Sep-tember 3, 1783, between the United States and Great Britain, whereby the territory now comprising the State of Tennessee was acquired, and by the act of Congress of June 1, 1796, creating the State of Tennessee, and the subsequent Louisiana Purchase under the treaty of April 30, 1803, and the subsequent erection of Territories and States out of the great area thus purchased, at "a line drawn along the middle of the river Mississippi." In the suit instituted by the State of Arkansas against the State of Tennessee (246 U. S. 158), the Supreme Court of the United States adjudicated the boundary line in the aforementioned treaties and statutes, fixing it as follows (quoting from the syllabus) :

"When two States of the Union are separated by a navigable stream, their boundary being described as 'a line drawn along the middle of the river,' or as 'the mid-dle of the main channel of the river,' the boundary must be fixed (by the rule of the 'thalweg') as the middle of the main navigable channel, so that each State may enjoy an equal right of navigation. * * * Following this prin-ciple, the court holds that the true boundary line between the States of Arkansas and Tennessee is the middle of the main channel of navigation of the Mississippi, as it existed at the treaty of peace concluded between the United States and Great Britain in 1783, subject to such changes as have occurred since that time through natural and gradual processes."

The court cited many previous decisions as being conclusive of the law thus announced. Following this declaration of law, it is clear that the lands, when formed, were on the east, or Tennessee, side of the channel, and were within the boundaries of the State of Tennessee.

The remaining question is whether or not the *situs* of the land with respect to the jurisdiction of the adjoining States was altered by the change in the main channel of the river from one side of the island to the other. That question has also been put at rest by the Supreme Court of the United States in the case cited above. In the opinion in that case the court said: "It is settled beyond the possibility of dispute that, where running streams are the boundaries between States, the same rule applies as between private proprietors, namely, that when the bed and channel are changed by the natural and gradual processes known as erosion and accretion, the boundary follows the varying course of the stream; while if the stream, from any cause, natural or artificial, suddenly leaves its old bed and forms a new one, by the process known as an avulsion, the resulting change of channel works no change of boundary, which remains in the middle of the old channel, although no water may be flowing in it, and irrespective of subsequent changes in the new channel." The facts in the case show that the change in the channel of the Mississippi River from the west to the east side of the island was by the process known as avulsion, and not by the gradual processes of accretion or reliction.

It follows therefore that the decree of the chancery court is correct, and the same is affirmed.