IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

FILED
April 10, 2014
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 13-0234

_____

DEAN LOWE AND MARTHA LOWE, INDIVIDUALLY
AND AS TRUSTEES OF THE DEMAR REVOCABLE TRUST,
Petitioners

V.

JOSEPH C. RICHARDS AND JOYCE A. RICHARDS, AND
HUGH E. HEGYI, TRUSTEE OF THE HERMAN HEGYI TRUST,
Respondents

_____

Appeal from the Circuit Court of Berkeley County
Honorable John C. Yoder, Judge
Civil Action No. 11-C-979

REVERSED AND REMANDED

_____

Submitted: March 25, 2014
Filed: April 10, 2014

Michael L. Scales, Esq.
Martinsburg, West Virginia
Attorney for Petitioners,
Dean and Martha Lowe

Charles F. Printz, Jr., Esq.
Jonathan T. Mayhew, Esq.
Bowles Rice LLP
Martinsburg, West Virginia
Attorney for the Respondents,
Joseph C. and Joyce A. Richards

CHIEF JUSTICE DAVIS delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "Whenever it is determined that a court has no jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket." Syllabus point 1, *Hinkle v. Bauer Lumber & Home Bldg. Center, Inc.*, 158 W. Va. 492, 211 S.E.2d 705 (1975).

2. The circuit courts of West Virginia have subject matter jurisdiction to resolve an interstate boundary line dispute between private litigants involving the issue of whether real property is located within the State of West Virginia or another state. Under the decision in *Durfee v. Duke*, 375 U.S. 106, 84 S. Ct. 242, 11 L. Ed. 2d 186 (1963), resolution of the boundary line issue by a circuit court is not binding on the affected states.

3. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

4. Under W. Va. Code § 29-23-2 (1987) (Repl. Vol. 2013) the Boundary Commission has a mandatory duty to investigate state, county, and municipal boundary line

i

disputes when requested to do so by the governor or Legislature.  The statute does not authorize private citizens to make such a request to the Boundary Commission.

5.      "Under Rule 19(a) of the West Virginia Rules of Civil Procedure a party becomes an indispensable party if he has an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may as a practical matter impair or impede his ability to protect that interest."  Syllabus point 1, *Pauley v. Gainer*, 177 W. Va. 464, 353 S.E.2d 318 (1986).

6.      In a real property action involving private parties that requires the determination of the boundary line between West Virginia and another state, neither the State of West Virginia nor the other state are required parties to the litigation.

**Davis, Chief Justice:**

Dean and Martha Lowe, petitioners herein, ("the Lowes") appeal from an order of the Circuit Court of Berkeley County dismissing their counterclaim and third-party complaint.[1] In the actions filed by the Lowes, they sought to obtain real property claimed by respondents Joseph and Joyce Richards ("the Richards") and Hugh Hegyi as Trustee of the Hegyi Trust ("the Hegyi Trust"). The property in question is situated on the border of West Virginia and Virginia. The circuit court determined that it did not have subject matter jurisdiction to resolve the Lowes' claims because they involved a determination of a boundary line between West Virginia and Virginia. The circuit court also found that the Lowes failed to join indispensable parties to the litigation, *i.e.*, the States of West Virginia and Virginia. Here, the Lowes contend that the circuit court had subject matter jurisdiction over the claims and that the States of West Virginia and Virginia were not indispensable parties.[2] After a careful review of the briefs, the record submitted on appeal, and listening to the arguments of the parties, we reverse and remand.

---

[1] The Lowes filed their actions individually and as Trustees of the Demar Revocable Trust.

[2] Although the Lowes set out six assignments of error, all issues can be resolved by addressing the issues of subject matter jurisdiction and indispensable parties.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

This matter began in November 2011 when the Hegyi Trust filed an action against the Lowes seeking a declaratory judgment and injunction.[3] The Hegyi Trust owned approximately 29 acres of real estate on the eastern boundary line of Frederick County, Virginia. The Lowes owned approximately 50 acres of real estate on the western boundary line of Berkeley County. The Lowes' property adjoined the Hegyi Trust property on the north and east. The Hegyi Trust filed its action against the Lowes to obtain a right of way across the Lowes' property so that it could access its property in Virginia.

In 2012, the Lowes filed a counterclaim against Hegyi Trust and a third-party complaint against the Richards alleging claims for ejectment and adverse possession. The third-party complaint alleged that the Richards owned 9.89 acres of real estate in Frederick County, Virginia, that was adjacent to the Lowes' property. The Lowes' third-party complaint alleged that part of the property claimed by the Hegyi Trust and the Richards was, in fact, located in Berkeley County, West Virginia. Consequently, the Lowes sought title to such property through adverse possession.[4]

---

[3]The Hegyi Trust also named as a defendant a man named George Sekel. A default judgment was entered against Mr. Sekel, and he is not a party to this appeal.

[4]The Lowes' claims for ejectment and adverse possession were based upon their surveyor's determination that the boundary line between West Virginia and Virginia,

(continued...)

2

The Richards filed a motion to dismiss the Lowes' counterclaim and third-party complaint.[5]  On February 15, 2013, the trial court granted the motion to dismiss.  In doing so, the trial court held that it lacked subject matter jurisdiction of the Lowes' claims because those claims had to be litigated in the United States Supreme Court or in a state administrative proceeding.  The trial court also ruled that the Lowes failed to join two indispensable parties, those being the States of West Virginia and Virginia.  As a result of these two rulings, the trial court also determined that the Lowes' third-party complaint failed to set out a cause of action against the Richards.  The Lowes now appeal the dismissal of their claims against the Richards.

## II.

## STANDARD OF REVIEW

In this proceeding, the trial court granted the Richards' motion to dismiss the Lowes' claims against them based upon a lack of subject matter jurisdiction, failure to join

---

[4](...continued)
in relation to the property claimed by the Hegyi Trust and the Richards, was N. 50° 16' 09" West.  The Lowes contended that any of the real property claimed by the Hegyi Trust and the Richards that was north of this line was in West Virginia.

[5]Although the Richards styled their motion as one seeking dismissal of the counterclaim and third-party complaint, they sought only dismissal of the third-party complaint against them.  The counterclaim, of course, was against the Hegyi Trust.  The Hegyi Trust did not join the Richards' motion, and the Trust did not file a separate motion to dismiss. The Hegyi Trust filed a motion with this Court requesting that it not participate in this appeal, which was granted.

indispensable parties, and the failure to state a claim for relief. We have held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).[6] This same standard applies to our review of statutes and rules relevant to this case. As we held in Syllabus point 1 of *Appalachian Power Co. v. State Tax Department of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995), "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Mindful of these applicable standards, we will consider the substantive issues raised by the parties.

---

[6]The parties submitted exhibits to support their respective positions on the three theories for dismissing the action, *i.e.*, lack of subject matter jurisdiction, failure to join indispensable parties, and failure to state a claim for relief. Even though a trial court considers materials outside the complaint on a motion to dismiss for lack of subject matter jurisdiction, this "does not convert the motion into a Rule 56 summary judgment motion." Franklin D. Cleckley, Robin Jean Davis and Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 12(b)(1), p. 328 (4th ed. 2012). It also has been recognized that consideration of materials outside the complaint on a motion to dismiss for failing to join indispensable parties does not result in the motion being converted to a summary judgment motion. *See* Cleckley, et al., *Litigation Handbook* § 12(b)(7), p. 397 ("A court may consider evidence outside the pleadings when ruling on a motion under Rule 12(b)(7)."). On the other hand, consideration of materials outside the complaint on a motion to dismiss for failing to state a claim upon which relief may be granted requires the motion "be treated as one for summary judgment and disposed of under Rule 56." Cleckley, et al., *Litigation Handbook*, § 12(b)(6), p. 393. Although the trial court's dismissal of the Lowes' claims, on the grounds of failure to state a cause of action, was technically a summary judgment dismissal, our standard of review of that aspect of the dismissal is still *de novo*. *See* Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

4

**III.**

**DISCUSSION**

Resolution of the Lowes' appeal requires this Court to address two dispositive issues. We first must determine whether the circuit court had subject matter jurisdiction to resolve the Lowes' claims. Then, we must decide whether the States of West Virginia and Virginia are required parties. We will address each issue separately.

**A. *Subject Matter Jurisdiction***

The circuit court granted the Richards' motion to dismiss under Rule 12(b)(1) of the West Virginia Rules of Civil Procedure. The circuit court believed that it did not have subject matter jurisdiction to resolve the issues. This Court has recognized that "[w]henever it is determined that a court has no jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket." Syl. pt. 1, *Hinkle v. Bauer Lumber & Home Bldg. Ctr., Inc.*, 158 W. Va. 492, 211 S.E.2d 705 (1975). *See* Syl. pt. 5, *State ex rel. Dale v. Stucky*, 232 W. Va. 299, 752 S.E.2d 330 (2013). The circuit court determined that it could not resolve the Lowes' claims without establishing that a boundary line of N. 50° 16' 09" West existed between the States of West Virginia and Virginia. The circuit court further believed that this issue had to be litigated before the United States Supreme Court or administratively pursuant to W. Va. Code § 29-23-2 (1987) (Repl. Vol. 2013). We disagree.

5

**1. Exclusive jurisdiction of the United States Supreme Court over boundary disputes between two or more states.** The circuit court found that any dispute involving the location of a boundary line between two states had to be litigated in the United States Supreme Court. In making this determination, the circuit court recognized that Congress has expressly decided that the United States Supreme Court "shall have original and exclusive jurisdiction of (1) all controversies between two or more states." 28 U.S.C.A. § 1251(a) (1978). *See Maryland v. Louisiana*, 451 U.S. 725, 735, 101 S. Ct. 2114, 2123, 68 L. Ed. 2d 576 (1981) ("The Constitution provides for this Court's original jurisdiction over cases in which a 'State shall be a Party.' Art. III, § 2, cl. 2. Congress has in turn provided that the Supreme Court shall have 'original and exclusive jurisdiction of all controversies between two or more States.' 28 U.S.C. § 1251(a)."). The problem with the circuit court's ruling is that neither West Virginia nor Virginia were named parties in the Lowes' action. On at least two occasions, the United States Supreme Court has addressed the issue of private parties litigating state boundary line disputes. As shown below, in both cases, the Supreme Court has ruled that its original jurisdiction is not invoked when private parties dispute the location of boundary lines between non-party states.

The first case decided by the Supreme Court that involved private parties litigating the location of the boundary lines of two states was *Durfee v. Duke*, 375 U.S. 106,

6

84 S. Ct. 242, 11 L. Ed. 2d 186 (1963).[7] In *Durfee,* two plaintiffs filed an action in a Nebraska trial court against a Missouri resident to quiet title to certain land located on the Missouri River. The main channel of the river formed the boundary between the states of Nebraska and Missouri. The defendant contested subject matter jurisdiction and argued that the disputed land was in Missouri. The trial court found that the land was situated in Nebraska and ruled in favor of the plaintiffs. The Supreme Court of Nebraska affirmed the judgment. The defendant did not petition the United States Supreme Court for a writ of certiorari to review that judgment. Instead, the defendant filed an action against the plaintiffs in a Missouri trial court alleging that the land was in Missouri. The suit was removed to a federal district court. The federal district court expressed the view that the land was in Missouri, but that the judgment of the Nebraska Supreme Court was *res judicata* and binding upon the court. The Eighth Circuit Court of Appeals reversed after concluding that the district court was not required to give full faith and credit to the Nebraska judgment. The Supreme Court granted certiorari and reversed the judgment of the Eighth Circuit. In finding that the Nebraska decision was *res judicata*, the Supreme Court determined that state courts could resolve interstate boundary line property disputes by private citizens but that such determinations are not binding on the affected states. The Supreme Court addressed the issues as follows:

---

[7]In fairness to the circuit court, neither party cited to the decision in *Durfee* when the circuit court considered the motion to dismiss. In fact, it was not until the Lowes filed their reply brief in this appeal that the *Durfee* decision was relied upon.

It is argued that an exception to this rule of jurisdictional finality should be made with respect to cases involving real property because of this Court's emphatic expressions of the doctrine that courts of one State are completely without jurisdiction directly to affect title to land in other States. This argument is wide of the mark. Courts of one State are equally without jurisdiction to dissolve the marriages of those domiciled in other States. But the location of land, like the domicile of a party to a divorce action, is a matter to be resolved by judicial determination. The question remains whether, once the matter has been fully litigated and judicially determined, it can be retried in another State in litigation between the same parties. Upon the reason and authority of the cases we have discussed, it is clear that the answer must be in the negative.

It is to be emphasized that all that was ultimately determined in the Nebraska litigation was title to the land in question as between the parties to the litigation there. Nothing there decided, and nothing that could be decided in litigation between the same parties or their privies in Missouri, could bind either Missouri or Nebraska with respect to any controversy they might have, now or in the future, as to the location of the boundary between them, or as to their respective sovereignty over the land in question. Either State may at any time protect its interest by initiating independent judicial proceedings here.

*Durfee*, 375 U.S. at 115-16, 84 S. Ct. at 247, 111 L. Ed. 2d 186 (internal quotations and citation omitted). In a terse concurring opinion by Justice Black, he made the following pertinent observation:

we are not deciding the question whether the respondent would continue to be bound by the Nebraska judgment should it later be authoritatively decided, either in an original proceeding between the States in this Court or by a compact between the two States under Art. I, s 10, that the disputed tract is in Missouri.

8

*Durfee*, 375 U.S. at 117, 84 S. Ct. at 248, 11 L. Ed. 2d 186  (Black, J., concurring).[8]

The issue of a trial court's subject matter jurisdiction over the location of boundary lines between two states was addressed again by the Supreme Court in *Mississippi v. Louisiana*, 506 U.S. 73, 113 S. Ct. 549, 121 L. Ed. 2d 466 (1992).  The decision in that case started out in federal district court in Mississippi as a dispute between private plaintiffs and private defendants as to the ownership of land that was situated along the west bank of the Mississippi River near Lake Providence, Louisiana.  The plaintiffs were Mississippi residents who claimed ownership of the land as being in Mississippi.  The defendants were Louisiana residents claiming ownership of the land as being situate in Louisiana.  The State of Louisiana intervened in the case and filed a third-party complaint against the State of Mississippi seeking a determination of the boundary between the two states.  The district court ultimately ruled that the disputed land was located within the territorial boundaries of Mississippi rather than Louisiana.  The Fifth Circuit Court of Appeals reversed.  The Supreme Court granted certiorari to address two issues: (1) whether the district court had subject matter jurisdiction over Louisiana's third-party complaint against Mississippi and (2)

---

[8]During oral argument, counsel for the Richards attempted to argue that *Durfee* was limited to disputes involving the location of state boundary lines in rivers or bodies of water.  There is no language in *Durfee* that restricts its application to only interstate water boundary line disputes.  The intent of *Durfee* was simply to acknowledge that not all interstate boundary line disputes had to be litigated in the United States Supreme Court. Under *Durfee,* private litigants have the right to have interstate boundary lines determined as between the litigants in a local state court.

whether the district court had subject matter jurisdiction of the dispute between private parties as to the location of the boundary line between the two states. As to the first issue, the Supreme Court held "that 28 U.S.C. § 1251(a), granting to this Court original and exclusive jurisdiction of all controversies between two States, deprived the District Court of jurisdiction of Louisiana's third-party complaint against Mississippi." *Mississippi*, 506 U.S. at 74, 113 S. Ct. at 551, 121 L. Ed 2d 466. As to the second issue, the Supreme Court found that the district court had subject matter jurisdiction over the dispute of private parties as to the location of the boundary line between the two states. The opinion addressed the second issue as follows:

> The District Court is conceded to have had jurisdiction over the claims of the private plaintiffs against the private defendants, and in deciding questions of private title to riparian property, it may be necessary to decide where the boundary lies between the two States. Adjudicating such a question in a dispute between private parties does not violate § 1251(a), because that section speaks not in terms of claims or issues, but in terms of parties. The States, of course, are not bound by any decision as to the boundary between them which was rendered in a lawsuit between private litigants. *See Durfee v. Duke*, 375 U.S. 106, 115, 84 S. Ct. 242, 247, 11 L. Ed. 2d 186 (1963).

*Mississippi*, 506 U.S. at 78, 113 S. Ct. at 553, 121 L. Ed. 2d 466.

The issue of litigating in a trial court an interstate boundary line dispute between government officials and private litigants was addressed in *People ex rel. Scott v. Dravo Corp.*, 295 N.E.2d 284 (Ill. App. Ct. 1973). In *Scott,* various Illinois officials filed

10

an action in state court against three private corporate defendants seeking a declaration that an island called Dog Island was within the territorial limits of the State of Illinois and not the State of Kentucky. The declaration was sought so that the three corporate defendants, which had entered into contracts to perform construction work on Dog Island, would be required to comply with Illinois tax laws. The circuit court dismissed the complaint for lack of subject matter jurisdiction. The plaintiffs appealed. The appellate court applied *Durfee* and held that the trial court had jurisdiction to determine whether the property was situated within the state of Illinois:

> The State of Illinois is not seeking to tax property or activity in Kentucky, nor is it claiming the power to tax because of some incidence or connection with some activity in Kentucky. Rather, it is asserting judicial jurisdiction over activity wholly within its own boundary. If the plaintiffs succeed in establishing as fact what they allege in their complaint, clearly they will be entitled to the relief they seek. Nothing appears at this juncture that will deprive the Illinois court of jurisdiction. Indisputably, the defendants will not be foreclosed from proof that, as a matter of fact, Dog Island is a part of Kentucky, and the Illinois court is accordingly without jurisdiction to render a valid judgment. But the Illinois court, under the rules of judicial jurisdiction and Res judicata discussed in the *Durfee* case, may receive evidence regarding the location of Dog Island with reference to the State boundary line, and therefrom make a determination of its jurisdiction.
>
> We do not see this action as an intrusion into the exclusive jurisdiction over disputes between States conferred upon the Supreme Court by article III, section 2 of the Constitution of the United States. . . . The two States are not in contention here nor are the issues tendered in the complaint sufficient to engage them in controversy.

11

*Scott*, 295 N.E.2d at 290. *See River Farms, Inc. v. Superior Court of San Bernardino Cnty.*, 252 Cal. App. 2d 604, 612 (1967) ("A state court has the power to determine, as between private contestants, the disputed question whether real property is within its boundaries or is in a neighboring state[.]"); *Kissell v. Stevens*, 261 S.W. 299 (Ark. 1924) (allowing private parties to litigate issue of whether property was located in Arkansas or Tennessee); *U. S. Gypsum Co. v. Uhlhorn*, 232 F. Supp. 994 (E.D. Ark. 1964) (determining private parties could litigate issue of whether property was located in Arkansas or Tennessee).

Based upon the United States Supreme Court decision in *Durfee* and the other authorities cited, we now hold that the circuit courts of West Virginia have subject matter jurisdiction to resolve an interstate boundary line dispute between private litigants involving the issue of whether real property is located within the State of West Virginia or another state. Under the decision in *Durfee v. Duke*, 375 U.S. 106, 84 S. Ct. 242, 11 L. Ed. 2d 186 (1963), resolution of the boundary line issue by a circuit court is not binding on the affected states.

It is clear from our holding that the circuit court had subject matter jurisdiction over the Lowes' claims against the Richards. Insofar as the States of West Virginia and Virginia are not parties to this litigation, the case did not fall within the exclusive jurisdiction of the United States Supreme Court. *See Louisiana v. Mississippi*, 516 U.S. 22, 23-24, 116

12

S. Ct. 290, 292, 133 L. Ed. 2d 265 (1995) ("We held that there was no jurisdiction in the District Court, or in the Court of Appeals, to grant any relief in the quiet title action to one State against the other, that authority being reserved for jurisdiction exclusive to this Court."); *California v. Texas*, 457 U.S. 164, 167-68, 102 S. Ct. 2335, 2337, 72 L. Ed. 2d 755 (1982) ("[T]his dispute is a controversy between two States within our original jurisdiction under 28 U.S.C. § 1251(a).").

**2. The West Virginia Boundary Commission.** The circuit court's order also found, as an alternative ground for lack of subject matter jurisdiction, that the Lowes' dispute was required to be resolved under W. Va. Code § 29-23-2 (1987) (Repl. Vol. 2013). The relevant language of this statute provides as follows:

> (a) There is hereby created a boundary commission which shall consist of three members, who shall be residents and citizens of the state, all of whom shall have experience involving map reading or surveying. The commission members shall investigate state, county and municipal boundary disputes when requested to do so by the governor or Legislature. The commission members shall be appointed by the governor, by and with the advice and consent of the Senate, no later than the first day of July, one thousand nine hundred eighty-seven. No more than two members may belong to the same political party. The commission members shall serve a term concurrent with that of the governor's term in office. Commission members may be reappointed to additional terms.

W. Va. Code § 29-23-2(a).

In our review of a statutory provision, it is essential to afford the enactment an interpretation that comports with the intent of the Legislature. We have held previously that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Commn'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). In order to ascertain legislative intent, it is necessary to consider the wording of the statute at issue. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). Thus, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

Applying these tenets to the statute presently before us, we conclude that the relevant language in W. Va. Code § 29-23-2(a) is clear and unambiguous. This statute creates a Boundary Commission that has a nondiscretionary duty to "investigate state, county and municipal boundary disputes when requested to do so by the governor or Legislature." W. Va. Code § 29-23-2(a). This statute expressly limits the authority of the Boundary Commission to act only when requested by the governor or Legislature. The statute does not authorize private parties to request the Boundary Commission to investigate a boundary

14

dispute. In view of the clear language of the statute, we now hold that under W. Va. Code § 29-23-2 (1987) (Repl. Vol. 2013), the Boundary Commission has a mandatory duty to investigate state, county, and municipal boundary line disputes when requested to do so by the governor or Legislature. The statute does not authorize private citizens to make such a request to the Boundary Commission.

It is obvious from the statute and our holding that even if the Lowes went to the Boundary Commission and made a request for a boundary line determination, as suggested by the circuit court, the statute did not authorize the Boundary Commission to act on the request. Thus, it is clear that the circuit court committed error in finding that it lacked subject matter jurisdiction on the grounds that the Lowes had to file their dispute with the Boundary Commission.[9]

---

[9]The Richards have argued in their response brief that the issue of the boundary line between West Virginia and Virginia "is a non-justiciable political question committed to the legislative and executive branches of government under the law of nations and pursuant to W.Va. Code §§ 29-23-1 (1987) *et seq*." The "political question" argument made by the Richards simply has no application to this litigation. *See*, *e.g.*, *State ex rel. League of Women Voters of W. Va. v. Tomblin*, 209 W. Va. 565, 574, 550 S.E.2d 355, 364 (2001) ("Questions involving perceived conflict between the legislative and executive branches are, by and large, political questions, which do not present issues with which this Court can, or should, concern itself"); *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216-17, 470 S.E.2d 162, 170-71 (1996) ("Respected authorities have called for judicial deferral to the political branches regarding the meaning and adequacy of constitutional amendment procedures."); *Killen v. Logan Cnty. Comm'n*, 170 W. Va. 602, 624, 295 S.E.2d 689, 711 (1982) (Neely, J., dissenting) ("The issue of taxation is, probably more than any other subject, first and last an issue for the legislature. It is the classic political question into which

(continued...)

### B. Indispensable Parties

The circuit court also granted the Richards' motion to dismiss under Rule 12(b)(7) of the West Virginia Rules of Civil Procedure because it reasoned the Lowes failed to join indispensable parties to the litigation, those being the State of West Virginia and Virginia. We disagree.

"Rule 12(b)(7) allows dismissal for failure to join a party under Rule 19." Cleckley, et al., *Litigation Handbook*, § 12(b)(7), p. 397.

> Under Rule 19(a) of the West Virginia Rules of Civil Procedure a party becomes an indispensable party if he has an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may as a practical matter impair or impede his ability to protect that interest.

Syl. pt. 1, *Pauley v. Gainer*, 177 W. Va. 464, 353 S.E.2d 318 (1986). The circuit court found that the rights of West Virginia and Virginia would be affected by its ruling; therefore, the States were indispensable parties. The order addressed the matter as follows:

---

[9](...continued)
courts should not intrude themselves."). As indicated above, the United States Supreme Court has held that neither the federal constitution nor a federal statute prohibits private parties from litigating interstate boundary line disputes in state courts. To the extent that the "political question" doctrine has any application to interstate boundary line disputes, it would be limited to the context of a dispute between two or more states. However, even in that context, the doctrine cannot be invoked to prevent the United States Supreme Court from presiding over a dispute between two or more states.

16

Both the States of Virginia and West Virginia are indispensable parties to the determination of the physical location of the border between the two states. A decree setting the boundary between Virginia and West Virginia would distribute territory between the two states, diminishing the area of one state to the benefit of the other. Any decree of the border without the presence of the states as parties would impair the rights of those states to protect their sovereign territory and thus cannot be made without their presence.

The circuit court's ruling is inconsistent with the pronouncements made by the United States Supreme Court in *Durfee* and *Mississippi v. Louisiana*, *supra*. In both cases the Supreme Court recognized that states are not bound by decisions resolving interstate boundary line disputes between private parties. *Durfee* held that "[e]ither State may at any time protect its interest by initiating independent judicial proceedings here." *Durfee*, 375 U.S. at 116, 84 S. Ct. at 247. The decision in *Mississippi* also held with reservation that "[t]he States, of course, are not bound by any decision as to the boundary between them which was rendered in a lawsuit between private litigants." *Mississippi*, 506 U.S. at 78, 113 S. Ct. at 553. Based upon these authorities, we hold that in a real property action involving private parties that requires the determination of the boundary line between West Virginia and another state, neither the state of West Virginia nor the other state are required parties to the litigation.

Therefore, it is clear from our holding that the circuit court committed error in dismissing the Lowes' action on the grounds that West Virginia and Virginia were indispensable parties.[10] Under the authority of the United States Supreme Court and our holding today, the rights of neither state will be impaired or impeded by the circuit court's decision on the merits of the Lowes' claims.[11]

## IV.

## CONCLUSION

The circuit court's order of February 15, 2013, dismissing the Lowes' counterclaim and third-party complaint is reversed. The case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

---

[10]The circuit court's decision that the Lowes' claims should be dismissed, for failure to state a claim for relief, was based solely upon the determination that it lacked subject matter jurisdiction and that the Lowes failed to join indispensable parties. Insofar as we have found the circuit court's subject matter jurisdiction and indispensable parties rulings were error, we summarily reverse the third basis for the circuit court's decision to dismiss the claims, *i.e.*, failure to state a claim for relief.

[11]We wish to make clear that in this appeal we have not considered the merits of the Lowes' claims. Rather, determination of the merits of the Lowes' claims is reserved for resolution on remand.

18